Slip Op. 11-23

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

ESTEE LAUDER INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Before: R. Kenton Musgrave, Senior Judge
Court No. 07-00217

**OPINION**

[Setting forth the rationale for the court's December 8, 2010 order denying the government's motion to dismiss.]

Dated: March 1, 2011

*Pisani & Roll, PLLC* (*Michael E. Roll*, *Bret Ian Harris*) for the Plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Field Office, U.S. Department of Justice (*Marcella Powell*); Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, U.S. Department of Homeland Security (*Yelena Slepak*), of counsel, for the Defendant.

Musgrave, Senior Judge: Plaintiff Estee Lauder, Inc. ("Estee Lauder") brought this action to challenge a decision of U.S. Customs and Border Protection ("Customs"or "CBP") to liquidate certain "cosmetics kits" that were classified by their individual components and not as "kits" or "sets." On December 8, 2010, the court heard oral argument on the government's motion to dismiss, for lack of subject-matter jurisdiction, alleging that Estee Lauder's administrative protest

was insufficient to encompass the merchandise before the court. At the close of oral argument, the court denied the motion. The rationale for that denial is set forth below.

*I. Background*

For several years, Estee Lauder has run a holiday sales promotion involving a cosmetics kit[1] known as the "Blockbuster." *See generally* Def's. Mot. to Dismiss at Exh. A. Although the Blockbuster varies slightly each year and there may be more than one kit version in a given year, it has typically contained 12-15 different cosmetics, cosmetic brushes, and other related items, which are assembled into a zippered carrying case that the parties refer to as a "train case" or "vanity case."

The current action concerns the Blockbuster cosmetics kits for the 2005 season, in particular those that were entered into the United States in three specific entries made in October and November of 2005. Apparently, there were three slightly different versions of the 2005 Blockbuster, but it is uncontested[2] that the three entries at issue here contained only one version of the kit the

---

[1] The court's use of the term "kit" is descriptive only and not intended to relate or amount to the legal identification of the item as a "kit" pursuant to General Rule of Interpretation 3(b) of the Harmonized Tariff Schedule of the United States ("HTSUS") .

[2] On the other hand, the government appears to dispute Estee Lauder's claim that the entries contained only cosmetics kits. Substantial portions of the government's memoranda are devoted to highlighting entry document information in apparent conflict with Estee Lauder's allegations. As noted *infra*, the court agrees that the entry documents do not provide the clarity that they could have. However, entry documents are often difficult to decipher, and some of the government's comments appear to be premised upon a misunderstanding of what those documents require. For example, on the CF 7501 entry summary, the indication of "x" instead of a quantity for cosmetics, and the description of an item via its HTSUS definition instead of as "brush roll" would appear to be a correct interpretation of that form's instructions. *See* Customs Directive 099 3550-061 (Sept. 18, 1992). Hence, for the purposes of this motion, the court is not in a position to draw any real conclusions from these apparent discrepancies. The court's overall impression of the entry (continued...)

Blockbuster model 99TH-80-0001 (“retail model”). A sample of the retail model was submitted to the court and admitted into evidence at the December 8, 2010 oral argument. That sample is accurately described as consisting of the following: four lipsticks; one eye pencil; one lip pencil; one mascara; one nail laquer; two lip glosses; two gold mirrored compacts, one containing blushes and a small brush, and the other containing several eye shadows with small applicators; a set of cosmetic brushes; an oblong beige cannister for the brushes known as a “brush roll;” and a matching beige zippered vanity case. *See* Def’s. Am. Mot. to Dismiss at 3; Evidence Exh. 1. The retail model Blockbuster was imported in a glossy metallic gold colored carton “dotted with snowflakes” of various sizes. *Id*. Inside the carton is the vanity case, which contains all of the above-listed contents except for the set of cosmetic brushes and the brush roll. The brush roll, with the cosmetic brushes inside, was imported inside of the carton *with* the vanity case, but not *inside* the vanity case. The brush roll is the focal point of the government’s motion.

The other two versions of the 2005 Blockbuster were the “specialty model” (model 97CN-80-0001), and the “PX model” (model 9A6E-80-0001). The specialty model is essentially identical to the retail model except for color. The PX model is a scaled-down version of the retail model and was designated for sales on military bases. According to the parties, the PX model resembles the other two models but does not include eye and lip pencils, has fewer brushes, and, importantly, does not contain a brush roll. Def’s. Am. Mot. to Dismiss at 4 and at Exh. F.

---

[2](...continued)
documents is that, for the most part, they are fairly consistent with Estee Lauder’s claims.

Although the merchandise was physically imported as a "kit" (that is, preassembled in the manner described above), the entry documents and the protest indicate that it was not entered through customs as ("*qua*") a kit. Instead, each component of the kit was entered separately,[3] and the entry documents give no obvious indication that all of the items were a part of a cosmetics kit. *See e.g.*, CF 7501, CF 3461, and *Invoice* for Entry No. 315-4002193-3 (Court File). The majority of the items are permitted entry duty free; however, the vanity case and brush roll, both classified under HTSUS 4204, were each assessed a duty of 20 percent, and the cosmetic applicators were assessed a duty of 4.3 percent. The entries were liquidated as entered in September 2006.

On November 22, 2006, Estee Lauder filed the protest at issue in this matter, which states as follows:

> Estee Lauder protests the tariff classification of the cosmetic kits imported under the entries identified on Exhibit A[4] (the "Subject Entries"). The cosmetic kits imported under the Subject Entries are made up of a combination of various cosmetics, brushes, and applicators in a vanity case. All of the components of the kits were entered under their individual tariff classifications and applicable dues were paid.
>
> The cosmetic kits consist of at least two (2) different articles which are, *prima facie*, classifiable in different headings. Further, the cosmetic kits consist of articles put up together to meet a particular need or carry out a specific activity. Finally, the cosmetic kits are put up in a manner suitable for sale directly to users without repackaging.
>
> Thus, the cosmetic kits are properly classified as "goods put up in sets for retail sale" with the essential character of the sets given by the cosmetic components. The cosmetic components of these sets are classified under heading 3304 of the Harmonized Tariff Schedule of the United States which covers beauty or make-up

---

[3] The separate entry for each item was apparently done in conformance with a CBP ruling letter concerning the 2004 Blockbuster, which, according to the description in the ruling letter, was very similar to the retail model. *See Ruling Letter* NY K81875.

[4] Exhibit A lists entry Nos. 315-4002124-8, 315-4002193-3, and 315-4002287-3.

> preparations and has a duty rate of free. Accordingly, these cosmetic kits are entitled to duty free entry.
>
> Estee Lauder hereby protests Customs' liquidation of the Subject Entries under the individual tariff classifications for the various components of the cosmetic kits and respectfully requests that the merchandise imported under these entries be reliquidated as sets under a single tariff classification and duty rate for cosmetics. . . .

Protest 3001-06-100487.

Because the protest was accompanied by a request for accelerated disposition, the protest was "deemed" denied by operation of law when Customs failed to act on it within a certain time period.[5] *See* 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22(d) (2006). Subsequent to that denial, Estee Lauder filed the action currently before the court.

*A. CBP's Arguments*

The government contends that Estee Lauder's protest is insufficient to encompass the retail model Blockbuster because the protest description contained no reference to the brush roll. According to the government, this deficiency is critical because the protest, as written, does not describe the retail model Blockbuster at all, but instead describes the PX model, the only Blockbuster without a brush roll. Def's. Am. Mot. to Dismiss at 12-13. Accordingly, the government concludes, "[b]ecause Estee Lauder protested [the PX model Blockbuster], and not the [retail model Blockbuster], this Court does not have subject matter jurisdiction." *Id.* at 7. The government notes that "claims predicated on imported merchandise that was not identified specifically in a protest" must be dismissed for lack of subject-matter jurisdiction, *id.* at 9, and references a series of cases it

---

[5] Pursuant to statute and regulation, the port director's failure to allow or deny the request within 30 days from the date of mailing of the request meant that the protest was deemed to have been denied as a matter of law at the close of the 30th day. *See* 19 U.S.C. § 1515(b) (2006); 19 C.F.R. § 174.22(d) (2006).

views as controlling in this matter. *See*, *e.g.*, *Superscope, Inc. v. United States*, 71 Cust. Ct. 301 (1979); *Tail Active Sportswear v. United States*, 16 CIT 504, 793 F. Supp. 325 (1992); *Hudson Rissman v. United States*, 46 Cust. Ct. 301 (1973)).

The government next contends that, in light of the critically-flawed product description, Estee Lauder's protest "did not (and could not) fairly apprise Customs of any objection as to the classification or rate of duty on Blockbuster model 99TH-80-0001 (retail store model)." Def's. Am. Mot. to Dismiss at 13. The entry documents are attacked as further misleading, to the point that the government asserts that "the entry documentation does not describe Blockbuster 99TH-80-0001 [(retail model)]." In this regard the government notes, *inter alia*, that (1) the entry summaries do not mention a brush roll container, (2) the invoices list "'makeup cases' and 'cosmetics cases'" but no brush roll, and (3) "the entry summaries and invoices indicate that the entries contained equal amounts of all of the imported cosmetics, applicators, brushes, makeup cases and cosmetic cases," which is patently "inconsistent with the actual components contained in the Blockbuster model" that was imported. *Id*. at 13-14. Thus, states the government, "at the protest level, there simply were no facts that could have fairly apprised Customs that Blockbuster model 99TH-80-0001 [(retail model)] was imported in the entries at issue . . . ." *Id*. at 14.

The government argues in the alternative that, should the court find jurisdiction over the action generally, the protest is still insufficient to confer jurisdiction over claims regarding the brush roll individually, and that any claims or statements concerning the brush roll should be dismissed from the complaint. On this count the government notes that "by its own terms, Estee Lauder's protest covered the vanity case and all of the articles inside the case" and that " the protest

does not contain a single reference to the imported brush roll container." *Id*. at 7.

*B. Estee Lauder's Arguments*

Estee Lauder responds that its protest is in conformity with the requirements of section 1514(c) because the protest accurately describes *either* model of the Blockbuster. Further, notes Estee Lauder, "Customs courts have long applied the requirements of 19 U.S.C. § 1514(c) and the accompanying regulations *liberally, rather than restrictively* so as to permit the exercise of the court's protest jurisdiction whenever possible." Pl's. Resp. at 9 (italics in original). Plaintiff contends further that "since cosmetic kits were the only products on these three entries, the Customs official charged with reviewing the protest" would have understood what merchandise was being protested. *Id*. at 11-12. "To suggest, as Defendant does . . . that model number 99TH-80-001 was never protested when cosmetic kits were the only products imported in the entries simply defies logic and common sense." *Id.*

Plaintiff further maintains that, contrary to the government's assertions, *Superscope* and *Tail Active Sportswear* do not govern this matter because, in those cases, "no reasonable reading of the protest language" could have included the merchandise therein disputed. *Id.* at 12. Plaintiff contends that this situation here is similar to the one presented in *Beck Distributing Corp. v. United States*, 67 Cust. Ct. 358 (1971), where the Court found sufficiency in a protest that described the merchandise simply as "engine parts." Plaintiff contends that, like the description of "engine parts" in *Beck Distributing*, "[t]he category of merchandise was stated in the protest to be 'cosmetic kits,'" which "clearly conveys Estee Lauder's intent to include within the protest all products described by the term 'cosmetics kit' covered by the referenced list of entries, without limitation." Pl's. Resp. at 22.

In response to Estee Lauder's arguments, the government asserts that, unlike the term "engine parts" at issue in *Beck Distributing*, "there is not a definitive meaning or scope" for the term "cosmetic kits," nor has it been discussed in prior litigation in a manner that would define it further. Def's Reply at 9. The government also challenges Estee Lauder's assertion that the cosmetic kits were the only products imported under the subject entries, noting again that certain entry documents contain evidence that conflicts with that assertion. *Id*. at 9-10.

*II. Applicable Law*

The ultimate burden of establishing jurisdiction rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936). Estee Lauder alleges jurisdiction under 28 U.S.C. § 1581(a), which limits the jurisdiction of this Court to appeals from denials of valid protests. Accordingly, the Court lacks jurisdiction over protests that do not satisfy the requirements of a valid protest as set forth in 19 U.S.C. § 1514(c)(1) and 19 C.F.R. § 174.13(a). *See Computime, Inc. v. United States,* 772 F.2d 874, 875 (Fed. Cir. 1985); *Washington Int'l Ins. Co. v. United States,* 16 CIT 601 (1992).

Pursuant to statute and regulation, a valid protest must, *inter alia*, "set forth distinctly and specifically . . . each category of merchandise affected" and must contain "a specific description of the merchandise affected . . . ." 19 U.S.C. § 1514(c)(1); 19 C.F.R. § 174.13(a). What constitutes a sufficient protest is necessarily dependent on the facts of each individual case; however, the analysis invariably turns on the now familiar language set forth in *Davies v. Arthur*, 96 U. S. 148 (1877). In *Davies*, the Supreme Court explained that protest sufficiency requirements were structured to

> compel the importer to disclose the grounds of the objection at the time when he makes his protest. . . . . Technical precision is not required; but the objections must be so distinct and specific as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

*Davies*, 96 U. S. 148, 151 (1877). *See also U. Fujita Co. v. United States*, 26 C.C.P.A. 63, 64 (1938) (applying the *Davies* analysis to determine the adequacy of a merchandise description and holding that a merchandise description is adequate if it "was sufficient to call attention to the importer's objections so that he may consider and pass upon them").

Nonetheless, "denial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly." *Eaton Mfg. Co. v. United States*, 469 F.3d 1098, 1104 (Fed. Cir. 1972). This Court has long held the position that protests are to be liberally interpreted in favor of sufficiency, stating that "[h]owever cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of [19 U.S.C. § 1514] if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought." *Mattel v. United States*, 72 Cust. Ct. 257, 262, 377 F. Supp. 955, 960 (1974).

### *III. Analysis*

As initial observations, the court notes that any merchandise description clearly includes some items of merchandise and clearly excludes others, and there is always the possibility that still other items could be viewed as "borderline." *Tail Active Sportswear*, *Superscope*, and *Lykes Pasco* all involve merchandise that was clearly excluded by the protest, to wit, a protest describing "*women's* wearing apparel" necessarily excluded *men's* wearing apparel, and a protest

as to "switches and similar merchandise, *etc*., assessed with a duty of 15.5%" necessarily excluded products that were not switches in any sense of the term, such as microphones (assessed at 13%.). *See Tail Active Sportswear*, 793 F. Supp. 325; *Superscope,* 71 Cust. Ct. 289, 291. Similarly, where a protest indicates that it applies to merchandise contained in certain specifically enumerated entries, it is implicitly (if not obviously) understood to exclude merchandise in all other entries. *Lykes Pasco, Inc. v. United States*, 22 CIT 614 (1998).

Here, the government's contention is not that the protest lacks specificity; quite to the contrary, it argues that Estee Lauder's protest is so specific that it clearly excludes the merchandise before the court. Put in the context of *Davies v. Arthur*, the government contends that the retail model Blockbuster (1) cannot possibly be the merchandise Estee Lauder had in mind at the time of the protest; and that (2) neither the protest by itself nor in conjunction with the entry documents would have apprised Customs officials that Estee Lauder intended to challenge the classification of the retail model Blockbuster.

The court cannot agree with the government. A fair construction of the protest leaves little doubt that the merchandise now before the court is what Estee Lauder "had in mind" at the time it was filed. The first sentence of the protest describes "cosmetics kits" that were imported under three specific entry numbers (Nos. 315-4002124-8, 315-4002193-3, and 315-4002287-3), and it is largely undisputed that the *only* cosmetics kits contained in those entries were retail model kits. Moreover, the second sentence of the protest, which describes the cosmetics kits as "made up of a combination of various cosmetics, brushes, and applicators in a vanity case" does, generally speaking, describe the retail model Blockbuster. Contrary to the government's contentions, the court

cannot agree that this sentence gives the impression of a precise description or an exhaustive list; the cosmetics are described only as "various," and no quantity or type is given for any of the items. The government's interpretation imputes to this sentence a technical precision that is neither evident in the language specifically, nor required of protests generally. Furthermore, given that no PX model cosmetics kits were imported in the subject entries, the government's ultimate conclusion (that the protest applies only to the PX model) can only be reached by ignoring the first sentence of the protest. Accordingly, the government's interpretation must be rejected.

For similar reasons the court is unconvinced by the government's characterization of the protest as "specifically identifying one model of an importer's product line," as a "misidentification" and as a "protest of the Blockbuster [PX model]." The protest contains no reference to models or model numbers of any kind. Indeed, nothing in the protest or entry papers would have apprised Customs that more than one version of the Blockbuster even existed. In essence, the government is attempting to introduce collateral information obtained during the discovery phase of this litigation to support its allegation that the merchandise before the court is not what was "in the mind of the importer" at the time of the protest. This cannot be accepted. Collateral information may not be considered when determining the jurisdictional sufficiency of a protest. *Koike Aronson, Inc. v. United States*, 165 F.3d 906, 909 (Fed. Cir. 1999). Moreover, given that a determination of protest sufficiency employs an objective and not a subjective test, the fact that a protestant may have imported, *in another entry*, a product that better fits the protest description is completely irrelevant to the question of whether the protest sufficiently describes the merchandise before the court.

The second part of the *Davies* analysis, concerning whether the protest was "sufficient to notify the collector of its true nature and character," *etc*., is somewhat more complicated in this case because it involves a "kit," or compilation of individual items. Yet, that is, in fact, what the protest describes an assemblage of items ("cosmetics kit"), and a general description of the items found therein. While it is true that the contents of a cosmetics kit have no exactly defined parameters, the term is not meaningless; at a minimum, it notified the collector that the merchandise was imported as an assemblage of items, not as individual pieces scattered within a mass of unmarked containers. Further, the protest informs the collector (1) that the cosmetic kits were "made up of a combination of various cosmetics, brushes, and applicators in a vanity case"; (2) that the kits were entered under the three listed entry numbers; and (3) that the components of the kit were entered (and liquidated) under the individual tariff classifications for each item. Importantly, the protest also notified Customs officials that Estee Lauder (4) objected to CBP's decision to liquidate the kits under the individual tariff classifications for each component instead of as a "kit" or "set" as defined by Rule 3(b) of the General Rules of Interpretation ("GRI") of the Harmonized Tariff Schedule of the United States.

The court agrees that, in comparing the protest description with the merchandise listed on the entry documents, it is not entirely clear which of the entered items were a part of the cosmetics kits. However, this fact should not have presented an insurmountable obstacle to Customs' acting upon the claim. Protest sufficiency does not turn on whether Customs can decide the entire claim based solely on information contained in the papers submitted. As explained in *Saab Cars USA, Inc., v. United States*, "the protest is the tool whereby the collector seeks the precise

facts." 276 F. Supp. 2d 1322, 1329 (2003) (*aff'd,* 454 F.3d 1359 (Fed. Cir. 2006)). *See also Davies*, 96 U.S. at 151-52 (noting that sufficiency turns upon whether the protest "was sufficient to notify the collector of its true nature and character, to the end *that he might ascertain the precise facts*, and have an opportunity to correct the mistake and cure the defect . . . .") (emphasis added)).

Accordingly, the protest "should have prompted Customs to seek the precise factual evidence necessary to evaluate [it]," *Saab*, 276 F. Supp. 2d at 1329, which in this instance would have meant obtaining a sample of the merchandise. In fact, given the complexity of the factual and legal question Estee Lauder raises (whether the merchandise qualified as a set pursuant to GRI 3(b)), the need for a sample should have been apparent on the face of the protest. *See What Every Member of the Trade Community Should Know About: Classification of Sets Under HTSUS* (CBP Informed Compl. Pub. Mar. 2004), at 10-16 (providing that a determination as to whether merchandise qualifies as a GRI 3(b) set requires Customs to determine, *inter alia*, whether the items in the set are intended to be used together, whether the goods are put up in a manner suitable for sale directly to users without repacking, and whether the container was designed to hold the items in the set). Pursuant to Customs Directive 3550-065 (August 4, 1993), CBP must notify the protestant or filer if the protest is missing vital information, and allow the protestant 30 days to remedy the problem. *See also Customs Protest/Petition Processing Handbook* (CBP Pub. HB 3500-08A Dec. 2007), at 9 (same). Interestingly, when CBP was presented with the protests in the actions related to this matter (which protests were not "deemed" denied but involved an evaluation by a Customs official), Customs requested a sample of the merchandise. *See* Pl's. Resp. at Exh. C.

Finally comes the question presented by the government's alternative argument: that, even if the court finds the protest encompasses the retail model Blockbuster as a whole, it does not cover the brush roll as an individual item. This argument is premised on the fact that upon importation, the brush roll was not physically contained inside the vanity case (although it was inside the gold carton with the vanity case). The government again points to the language of the protest, noting that "by its own terms, Estee Lauder's protest covered the vanity case and all of the articles inside the case" and that " the protest does not contain a single reference to the imported brush roll container." Def.'s Am. Mot. to Dismiss at 7.

The court must reject this argument as well. A sample of the retail model Blockbuster was submitted to the court, and officially admitted into evidence during the hearing. As is often the case, this sample is "a most potent witness" in resolving the issue. *Marshall Field & Co v. United States*, 45 C.C.P.A. 72, 81, 1958 WL 7370, 8 (1958). As noted above, the retail model Blockbuster is shipped in a gold-colored carton covered with snowflake shapes of various sizes. The court notes that, on the back of the carton, instead of snowflakes, the contents of the kit (and their ingredients) are listed. The list includes "makeup brush cannister." The court finds this to be persuasive evidence that the retail model included a brush roll at the time of the protest, and that Customs would have been apprised of that fact if a sample had been obtained. *See generally Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (observing that only uncontroverted facts are accepted as true for the purposes of a motion to dismiss and that "[a]ll other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court.").

*IV. Conclusion*

In consideration of the foregoing, and in consideration of the excellent comments presented by the parties at the December 8, 2010 oral arguments on this matter, the court concluded, at the close of those arguments, that the government's motion to dismiss should be denied. Accordingly, and for the purpose of avoiding further delay, the motion was so denied.

**AS ORDERED.**

/s/ R. Kenton Musgrave
R. KENTON MUSGRAVE, Senior Judge

Dated: March 1, 2011
New York, New York