Slip Op - 12- 1

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                   :
ESTEE LAUDER, INC.,                :
                                   :
                  Plaintiff,       :
                                   :
            v.                     :     Before: R. Kenton Musgrave,  Senior Judge
                                   :     Court No. 07-00217
UNITED STATES,                     :
                                   :
                  Defendant.       :
_____:
```

## OPINION

[On cross motions for summary judgment of classification of cosmetic sets, judgment for the plaintiff.]

Decided: January 3, 2012

*Pisani & Roll, LLP* (*Michael E. Roll*, *Robert J. Pisani* and *Brett Ian Harris*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Marcella Powell*), Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (*Yelena Slepak*), of counsel, for the defendant.

Musgrave, Senior Judge:  Plaintiff Estée Lauder, Inc.  challenges U.S. Customs and Border Protection's ("Customs") classification of its "Blockbuster" cosmetic sets.   Proper administrative protest procedure having been undertaken and all liquidated duties, taxes and fees having been paid, *see* 19 U.S.C. §§ 1514, 1515, jurisdiction is proper pursuant to 28 U.S.C. §1581(a).

*I. Facts*

Plaintiff Estée Lauder is "well known for being a makeup, skin care and fragrance company".[1]  Estée Lauder chose the makeup colors in the set at issue herein so as to have an appealing assortment of makeup shades that work well together and to allow a consumer to create different makeup looks.  Pl's Material Facts ¶¶ 23-4.  The target customer of the "Blockbuster" cosmetic set is the Estée Lauder customer who uses makeup.  *Id*. ¶ 16.  The sets contain makeup that is designed to be put on by the consumer.  *Id*. ¶ 22.

The Blockbuster sets are imported and sold in a glossy metallic gold-colored carton dotted with snowflakes.  The sets contain lipstick, lip pencil, lip gloss, eye pencil, mascara, eye shadow, nail lacquer, blush, a cosmetic case[2], a makeup brush case, cosmetic brushes and an applicator.  The cosmetic case contains the items listed above except the brushes, which are packed separately in the makeup brush case.  Both cases are packed in the gold carton.  The cosmetics are either promotional sizes or are contained in promotional packaging.  Defendant's Statement of Undisputed Material Facts ("Def's Material Facts"), ¶ 38.

---

[1]  Plaintiff's Statement of Material Facts not in Dispute ("Pl's Material Facts"), ¶ 13. Unless otherwise noted, all facts cited in this opinion are undisputed.

[2]  The parties disagree what to call the zippered case which at the time of importation contained most of the makeup articles.  In this court's opinion on the government's motion to dismiss the cases were referred to as "train cases" or "vanity cases".  *Estée Lauder, Inc. v. United States*, 35 CIT ___ (2011), Slip Op. 11-23 at 2.  Plaintiff contends the cases are "cosmetic" cases. Defendant argues they should be denoted "travel" cases, even though it avers that the cases are "not suitable for the transportation of the imported cosmetic articles".  Def's Resp. to Pl's Material Facts ¶ 47.  The name applied to the cases is not material.  However, for the sake of consistency, the court denotes the cases "cosmetic cases" in this opinion.

The cosmetic case contains a "vacform" plastic insert into which the makeup products are fitted to protect the goods during shipment, as well as to allow the items to be self-displayed at retail.  Pl's Material Facts ¶ 42.  The cosmetic case is significantly larger than the cosmetics contained therein, and conceivably could carry anything that is smaller than the case itself.  Def's Material Facts ¶¶ 8, 40.  The cosmetic case is suited for use on a flat surface, such as a table, vanity, etc.  Pl's Material Facts ¶ 54.  The case is constructed without gussets and thus is unsuited to be opened like a handbag.  *Id*. ¶ 56.  The cosmetic case is not a piece of luggage.  Def's Material Facts ¶ 39.  The case facilitates the storage and use of the cosmetics stored within the case.[3]  The makeup brush case contains three brushes, and is designed to be placed in the cosmetic case after purchase.  Pl's Material Facts ¶ 50.  The makeup brush case is approximately the same size as the brushes contained therein.  *Id*. ¶ 64.

The sets were sold as part of the Estée Lauder Blockbuster promotional effort.  The sets were displayed in the cosmetic section of department stores.  *Id*. ¶ 45.  The sets were sold as a "purchase with purchase" promotion, meaning that the consumer must purchase an Estée Lauder full-price fragrance in order to qualify to purchase the Blockbuster set.  *Id*. ¶¶ 10-11.  The items' packaging all complement each other visually as part of the Estée Lauder "Pure Color" line of products.  For example, there are gold accents on each of the items.  *Id*. ¶¶ 28-32.  None of the items comprising the set were sold separately.  *Id*. ¶ 8.  The set was advertised as the "Makeup Artist Professional Color Collection."  *Id*. ¶ 14, Def's Exh. F (Estée Lauder Advertisement).  The cost of

---

[3]  Pl's Material Facts ¶ 48.  The government's denial of this paragraph falls flat because the sources cited were inapposite and their objections conclusory.

the makeup components that comprise the set is more than 50% of the material cost of the set.  Pl's

Material Facts ¶ 68.

## II.  *Applicable Legal Standards*

Proper tariff classification is determined by the General Rules of Interpretation

("GRIs") of the  Harmonized Tariff System of the U.S. ("HTSUS") and the Additional U.S. Rules

of Interpretation.  *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).   The

GRIs are applied in numerical order.  *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir.

2007).   Classification is a question of law requiring ascertainment of proper meaning in relevant

tariff provisions and determining whether the merchandise comes within the description of such

terms.  *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999).   Interpretation of the

HTSUS begins with the language of the tariff headings and subheadings of the HTSUS and their

section and chapter notes, and may also be aided by the Explanatory Notes published by the World

Customs Organization.  *Trumpf Med. Sys., Inc. v. United States*, 34 CIT ___, ____, 753 F.  Supp.

2d 1297, 1305-1306 n. 20 (2010).

Both parties move for judgment pursuant to USCIT Rule 56, which is appropriate "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  USCIT R. 56(c); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). The court will grant a motion for summary judgment "if the pleadings,

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c);

see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted).

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

Customs' presumption of correctness, 28 U.S.C. § 2639(a)(1), attaches only to Customs' factual determinations. *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). The proper scope and meaning of a tariff classification term is a question of law, while whether the subject merchandise falls within a particular tariff term as properly construed is a question of fact. *Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002) (citations omitted). However, where the nature of the merchandise is undisputed, "'the classification issue collapses entirely into a question of law,' and the court reviews Customs' classification decision *de novo*." *Dell Prods. LP v. United States*, 34 CIT ___, 714 F. Supp. 2d 1252, 1256 (CIT 2010), *aff'd* 642 F.3d 1055 (Fed. Cir. 2011) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)). Customs' statutory presumption of correctness is irrelevant with regard to classification decisions on summary judgment. *Blakley Corp. v. United States*, 22 CIT 635, 639, 15 F. Supp. 2d 865, 869 (1998).

### III.  Competing Tariff Provisions

As entered, the items were classified separately under several subheadings.[4] Plaintiff contends the cosmetics should be classified as sets, under subheading 3304.20, HTSUS because the eye makeup gives the cosmetic set its essential character.  The government contends that the goods should remain classified separately, or if the goods are classifiable as a set, the cosmetic case gives them their essential character and so the sets should be classified under subheading 4202.12.20, HTSUS.

The primary subheadings at issue are as follows:

3304:   Beauty or make-up preparations and preparations for the care of the skin (other than medicaments), including sunscreen or sun tan preparations; manicure or pedicure preparations:

| | | |
|---|---|---|
| 3304.10: | Lip make-up preparations . . . . . . . . . . . . . . . . . . | *Free* |
| 3304.20: | Eye make-up preparations . . . . . . . . . . . . . . . . . . | *Free* |
| 3304.30: | Manicure or pedicure preparations  . . . . . . . . . . . | *Free* |
| 3304.91: | Other | |
| 3304.91.00 | Powders, whether or not compressed . . . . | *Free* |

4202:   Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:

Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels and similar containers:

* * *

---

[4]  The various components of the sets were classified upon entry in the following HTSUS subheadings: 3304.10 (lipstick, lip pencil, lip gloss), 3304.20 (eye pencil, mascara, eye shadow), 3304.30 (nail lacquer), 3304.91 (blush), 4202.12.20 (cosmetic case), 4202.92.45 (makeup brush case), 9603.30.60 (cosmetic brush) and 9616.20 (applicator).

4201.12:          With outer surface of plastics or of textile materials:
4202.12.20:               With outer surface of plastics . . . . . . . . . . 20% *ad valorem*
                                        * * *
          Other [than trunks, suitcases, etc. or articles of a kind normally carried in the pocket
or handbag]:
4202.92:          With outer surface of sheeting of plastic or of textile materials:
                          Travel, sports and similar bags:
4202.92.45:                    Other. . . . . . . . . . . . . . . . . . . . . . . 20% *ad valorem*


*IV. Analysis*

          After considering the parties' motions, the court finds that there are no material facts

in dispute and that the matter may be resolved summarily.[5]  The imported merchandise is properly

classified as a cosmetics set in subheading 3304.20, for the reasons set forth below.

A

          The government argues unpersuasively that the sets should be classified as entered,

according to the classification of each individual component. "[B]ecause the merchandise at issue

is classifiable pursuant to GRI 1, the classification inquiry ends and there is no need to resort to the

remaining successive GRI's [*sic*] to classify the merchandise at issue." Def's Mem. in Supp. of

Cross-Mot. for S.J. ("Def's Br.") at 7.  The government's facile reading of the GRIs would make the

terms of GRI 3(b)'s "retail sets" language inapplicable under any situation.  If the government's

argument prevailed, the court cannot think of any situation where a group of goods put up as a set

for retail sale could not be required to be classified separately "pursuant to GRI 1".  In this case the

cosmetic sets cannot be classified pursuant to GRI 1 without doing a GRI 3 analysis because no

single heading describes all the products in the cosmetic set.  Review of the other GRIs in order

_____

          [5] The parties' motions for oral argument and reconsideration are therefore denied.

reveals that the sets must be analyzed under GRI 3(b).  Only should such classification fail would

they be classifiable individually.

The GRI 3(b) retail sets rule recognizes that imported retail sets are packaged and sold

as a unit but contain multiple components.  The rule allows customs authorities and importers to

classify such sets as one item rather than as individual components.  GRI 3(b) provides:

> When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:
> * * *
> (b) . . . [G]oods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

The first issue to be decided is whether the cosmetics, brushes and associated cases

together qualify as "goods put up in sets for retail sale".  The Explanatory Notes to GRI 3(b) explain:

> (X) For the purposes of this Rule, the term "goods put up in sets for retail sale" shall be taken to mean goods which:
>
> (a) consist of at least two different articles which are, *prima facie*, classifiable in different headings. Therefore, for example, six fondue forks cannot be regarded as a set within the meaning of this Rule;
>
> (b) consist of products or articles put up together to meet a particular need or carry out a specific activity; and
>
> (c) are put up in a manner suitable for sale directly to users without repacking (*e.g.*, in boxes or cases or on boards).

Explanatory Note (X) to GRI 3(b) (2007).  The parties agree that the merchandise satisfies criteria

(a) and (c).  The court must therefore determine whether the goods "meet a particular need or carry

out a specific activity."  That task is aided by the following illustrative examples of sets among the

Explanatory Notes:

Examples of sets which can be classified by reference to Rule 3 (b) are:

(1) (a)   Sets consisting of a sandwich made of beef, with or without cheese, in a bun (heading 16.02), packaged with potato chips (French fries) (heading 20.04):
Classification in heading 16.02.

(b) Sets, the components of which are intended to be used together in the preparation of a spaghetti meal, consisting of a packet of uncooked spaghetti (heading 19.02), a sachet of grated cheese (heading 04.06) and a small tin of tomato sauce (heading 21.03), put up in a carton:
Classification in heading 19.02.

The Rule does not, however, cover selections of products put up together and consisting, for example, of:

- a can of shrimps (heading 16.05), a can of *paté de foie* (heading 16.02), a can of cocktail sausages (heading 16.01); or
- a bottle of spirits of heading 22.08 and a bottle of wine of heading 22.04.

In the case of these two examples and similar selections of products, each item is to be classified separately in its own appropriate heading.

(2) Hairdressing sets consisting of a pair of electric hair clippers (heading 85.10), a comb (heading 96.15), a pair of scissors (heading 82.13), a brush (heading 96.03) and a towel of textile material (heading 63.02), put up in a leather case (heading 42.02):
Classification in heading 85.10.

(3) Drawing kits comprising a ruler (heading 90.17), a disc calculator (heading 90.17), a drawing compass (heading 90.17), a pencil (heading 96.09) and a pencil-sharpener (heading 82.14), put up in a case of plastic sheeting (heading 42.02):
Classification in heading 90.17.

For the sets mentioned above, the classification is made according to the component, or components taken together, which can be regarded as conferring on the set as a whole its essential character.

*Id*.

For its part, Customs has summarized the particular need/specific activity requirement as requiring "a relationship between the articles contained in a group, and such relationship must

establish that the articles are clearly intended for use together for a single purpose or activity to

comprise a set under GRI 3(b)."  CBP Informed Compliance Publication, *Classification of Sets*

(2004) ("Sets ICP"), at 12.  Customs found common themes in the Explanatory Notes examples

showing what constitutes a particular need or a specific activity.

> In (1) [EN 3(b)(X)(1), the sandwich in bun packaged with potato chips, and
> the spaghetti meal] and (2) [EN 3(b)(X)(2), the hairdressing set], the examples
> referred to as "sets" share a common trait. The individual components in each
> example *are used together or in conjunction with another for a single purpose or
> activity*. In the "spaghetti meal" example, each component may be sold separately
> and used in a variety of recipes. However, sold together they are clearly intended to
> be used together for the specific purpose of preparing a single dish.  Similarly, the
> "hairdressing set" is comprised of various articles that may be sold individually for
> many purposes. However, taken together they are designed to be used together for a
> single activity.
>
> On the other hand, (1) [EN 3(b)(X)(1)] contains two examples where articles
> put up together are not regarded as 'sets,' despite the fact that they are related to one
> another and can be used at the same time. In the 'canned goods' example, each can
> is related by the fact that they all contain food. In addition, it is possible to serve them
> on the same occasion. One could argue that they meet the specific need of 'eating a
> meal.' However, they do not interact with one another so as to comprise a single dish.
> Therefore, they do not comprise a set.
>
> In the 'spirits' example, the two articles are related as they both contain
> alcohol. Moreover, the wine and liquor may be served together at dinner or at a party.
> It is possible to argue that they have been packaged together for the specific activity
> of 'social drinking.' However, they are not used in conjunction with one another so
> as to be suitable for a single drink or for use on a specific occasion. Hence, they are
> not classified as a set.

Sets ICP, at 11-12, citing, HQ 953472, dated March 21, 1994 (emphasis added).  The Sets ICP

summarizes the rule as follows: "for goods put up together to meet the 'particular need' or 'specific

activity' requirement and thereby be deemed a set, they must be so related as to be clearly intended

for use together or in conjunction with one another for a single purpose or activity." Sets ICP, at 12.

This analysis expounds on the meaning of the terms "particular need" or "specific activity" for

purposes of GRI 3(b) based upon inferences drawn from the examples given in the Explanatory

Notes and is persuasive.

Indeed, the Explanatory Notes examples and Customs' Sets ICP are helpful and

convincing.  The parties agree that the components of the Blockbuster set were put together to be

sold to customers who would use the makeup in the sets to create different makeup looks.  The

particular need or specific activity the set is designed for is that of putting on makeup, and the

included items are either makeup, tools for applying makeup, or their containers.  They are intended

for use together or in conjunction with one another for the single purpose or activity of putting on

makeup.  Each item by itself has an identifiable individual use like the items in the hairdressing and

drawing kit examples given in the Explanatory Notes.  They are intended to work together to meet

the particular need or specific activity of applying makeup.  The cosmetic sets are therefore "retail

sets" pursuant to GRI 3(b).

B

Having found the merchandise constitutes retail sets covered by GRI 3(b), the court

must next determine which item gives the set its essential character.  The Explanatory Notes state

"[t]he factor which determines essential character will vary as between different kinds of goods. It

may, for example, be determined by the nature of the material or component, its bulk, quantity,

weight or value, or by the role of a constituent material in relation to the use of the goods."

Explanatory Note (VIII) to GRI 3(b) (2007).

Once again, the Explanatory Notes examples provide helpful guidance.  "[T]he

classification is made according to the . . . components taken together, which can be regarded as

conferring on the set as a whole its essential character." Explanatory Note (X) to GRI 3(b). The EN's hairdressing and drawing kit examples each contained a variety of goods which performed the particular need the set was designed to address. The hairdressing kit was classified under the heading appropriate for the included electric hair clippers, while the drawing kit was classified under the heading appropriate to three of the included drawing tools.

Here, it is obvious that the essential character of the Blockbuster cosmetic set derives from the makeup components of the set, no fewer than eight of which are classified in Heading 3304, HTSUS. The role of the makeup components is essential to the use of the goods. Without makeup, a purchaser could not meet the particular need of putting on makeup. The makeup components comprise more than 50% of the value of the sets, and their nature as well as their role in relation to the overall use of the set confer the essential character of the cosmetic sets.

C

The court must next consider which of the set's makeup items classifiable within Heading 3304 should provide the subheading classification for the entire cosmetic set. Per GRI 6, classification at the subheading level uses the same rules, *mutatis mutandis*, as classification at the heading level. Therefore, we come again to GRI 3(b) to determine which one of the makeup items provides the essential character of the group of makeup items included in the cosmetic sets. Each of the various makeup types (eye, lip, face and nail) could conceivably provide the essential character to the makeup collection. Among those, the eye and lip makeup predominate by number, and as between the two, although there was conflicting evidence on the actual cost of the makeup items, the entry papers show that the eye makeups cost significantly more than the lip makeups. The other

cost evidence in the record corroborated this relationship.  Therefore, the court concludes that the set should be classified according to the subheading for eye makeup.

D

The parties disagree whether the carrying case, and to a lesser extent the brush case, should affect the classification of the cosmetic set.  Plaintiff contends that the cases should not impact the classification of the set because the cosmetic case is suitable for the storage, protection and transportation of the cosmetic components under normal use.  "Because the Blockbuster cosmetic case facilitates the transportation, storage and use of the cosmetics and other components contained within and for which it was designed, marketed and sold, it helps carry out the specific activity of applying make-up together with its contents." Pl's Memo in Opp. To Def's Br., at 30-31 (citations omitted).

The government argues against GRI 3(b) sets classification because the items in the set, especially the cosmetic case, do not meet the "particular need or carry out a specific activity" criterion cited in the Explanatory Notes to GRI 3(b).  Def's Br. at 10.  Assuming *arguendo* that the set is classifiable pursuant to GRI Rule 3(b), defendant argues strenuously that the "travel case" should control the classification, because it gives the set its essential character.

> The travel case predominates in bulk and weight over all other imported components. The travel case is also the largest component and its cost is the component that has the highest cost. The travel case is also the most visual component of the Blockbuster and due to its size, the travel case provides a means for the articles to be self-merchandising. Consequently, the travel case imparts the essential character of the Blockbuster.[6]

---

[6]  Def's Br. at 26.  The costs alleged in the government's argument are not undisputed and the source cited by the government contradicts the values declared upon entry.  That source stated
(continued...)

Once again, the examples given in the Explanatory Note to GRI 3(b) provide guidance.  In the hairdressing example, the set was packaged in a leather case.  In the drawing example, the kit was packaged in a case of plastic sheeting.  There, as here, the cases were classifiable separately in Heading 4202.  But the essential character of the sets were given by the functional items included in the sets.  Thus, where the essential character of the cosmetic set is given by the makeup components, the fact that the set is imported in a container that could be separately classifiable does not prevent the classification of the set as such.  The cosmetic case's relative weight, bulk, or size does not overcome the fact that its purpose is to facilitate the storage and use of the items that enable the set to fulfill the specific activity (applying makeup) that makes it a set. *See infra*.

E

The government argues that the cosmetic case in this instance "lacks the physical characteristics necessary to allow it to interact with the cosmetic components to carry out the specific activity of applying makeup" and that the goods are not a set because "there are no loops or compartments to hold and organize the items, nor a built-in mirror to use for the purpose of applying makeup." Def's Br. at 11.  Further, the government argues, "Customs' interpretation and application of GRI 3(b) and the criteria set forth in Explanatory Note (X) to the merchandise at issue should be

---

[6] (...continued)
that the makeup components together cost 60% more than the case. *Id.*, citing Goulding Decl., ¶ 31 (confidential).  The parties agree that the makeup components comprise more than half the overall cost of the set. Pl's Material Facts ¶ 68.

accorded weight as they are entirely consistent with Customs' views as expressed in its body of prior

rulings." *Id.* at 15.

Customs' position on the issue must be evaluated according to *Skidmore v. Swift &*

*Co.*, 323 U.S. 134 (1944):

> The weight [accorded to an administrative] judgment in a particular case will depend
> upon the thoroughness evident in its consideration, the validity of its reasoning, its
> consistency with earlier and later pronouncements, and all those factors which give
> it power to persuade, if lacking power to control.

*United States v. Mead Corp.*, 533 US 218, 228 (2001), quoting *Skidmore*, 323 U.S. at 140.  Review

of the statute in question, along with the Explanatory Notes, reveals fundamental flaws in Customs'

analysis of this issue and inconsistent application of it, thus eliminating its persuasiveness.  For the

reasons set forth below, the court declines the government's invitation to follow Customs' views and

accords the Customs rulings on this issue no weight.

Customs' analysis conflates the GRI 3(b) requirements for composite goods (*i.e.*,

whether the items are "mutually complementary" or "adapted to one another"), with the requirements

for the GRI 3(b) retail sets analysis (do the goods "meet a particular need" or "carry out a specific

activity"?).  *See* Explanatory Notes (IX) and (X) to GRI 3(b).  In HQ 957707, Customs stated that

"[t]he case and cosmetic components are not mutually complementary, not adapted to one another,

and are not put up to meet a particular need or carry out a specific activity[; t]hus, the goods do not

comprise a set." HQ 957707, dated June 26, 1995, cited in Def's Br. at 15.  Requiring set goods to

be mutually complementary or adapted to one another effectively joins the Explanatory Notes

requirements for composite goods to the Explanatory Notes describing retail sets.  This conflation

of requirements is unsupported in the statute or the Explanatory Notes.  Although it is true that courts

may follow the "well-reasoned views of the agencies implementing a statute," *Mead*, 533 U.S. at

227, citing *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998), the above rationale is not well reasoned.

This flawed analysis has been bootstrapped into a line of rulings that rely largely on

Customs' own reasoning but little on the statute or Explanatory Notes.  For example, HQ 966719,

dated June 9, 2004, classified a cosmetic set imported in a briefcase made of PVC sheeting.  In

determining whether the goods constituted a set for purposes of GRI 3(b), Customs stated

categorically that "cosmetic products imported in substantial, reusable cosmetics bags, do not form

composite goods[;] . . . the cosmetic products and container were not mutually complementary and

not adapted to [be] used together."  HQ 966719, citing HQ 963593, dated October 15, 2001.  The

court cannot fathom why an entire line of products should be categorically prevented  from being

classified as sets simply because their container is reusable.

There are two different classes of GRI 3(b) merchandise, with two separate and

distinct requirements.  *Cf.*, EN Rule 3(b)(VI)(ii) and (iii) (composite goods consisting of different

materials or components) *with* EN Rule 3(b)(VI)(iv) (goods put up in sets for retail sale).  GRI 3(b)

retail sets are defined as those that "meet a particular need" or "carry out a specific activity."  EN (X)

to GRI 3(b).  Composite goods are not retail sets, although both are classified according to their

essential character.  Customs has routinely rejected the GRI 3(b) classification of cosmetic sets like

those at issue here based upon a fatally flawed analysis.  The government's argument relying on the

same flawed "conflation" analysis is rejected.

F

The government argues that the Blockbuster cosmetics set cannot be classified as a GRI 3(b) set because the included case is too large to closely carry all the items in the set.  Def's Br. at 11.  There is nothing in the statute, however, that requires a set container to be closely fitted to its contents.

Strictly speaking, the statute simply requires that sets be classified according to the heading of the good that gives them their essential character.  The Explanatory Notes to GRI 3(b) provide three requirements for sets, described *supra*.  The only Explanatory Note requirement that could justify Customs' position on the relative size of set containers requires that a set's contents "meet a particular need" or "carry out a specific activity."  Yet, the Sets ICP summarizes Customs' rulings in this area as follows:

> If Customs determines that a holder or container included with other articles is **specifically designed to hold or contain** those articles, such a determination will support the further conclusion that the articles and the holder or container are **intended to be used together**, or in conjunction with one another, to meet a particular need or carry out a specific activity. Characteristics used in determining whether a holder or container is specifically designed to hold or contain the other articles of a claimed set include a comparison between the articles and their holder or container of size, shape, construction, color combination, use, etc. The burden will be on the importer to provide evidence of design characteristics which link the articles to the holder or container. The holder or container need not be form-fitted or otherwise dedicated specifically to holding or carrying the articles imported with it, but it must be a particularly appropriate container and its capacity not appreciably larger than that required to hold or carry the accompanying articles.

CBP, Sets ICP, at 15 (emphasis in original).  The Sets ICP thus concludes that a container must be "specifically designed to hold" and "intended to be used together" to form a GRI 3(b) set.  These requirements are not based on the statutory text, but appear to be derived from Customs rulings

relying on the flawed "conflation" analysis  described above.   *See* Explanatory Note (IX) to GRI

3(b) (composite goods must be "adapted to one another" and "mutually complementary").

Customs' restriction of the size of set containers to only those that are "not

appreciably larger" than their contents also lacks a rational basis in the language of the statute or the

Explanatory Notes.  More precisely, Customs' position that a container's size cannot be "appreciably

larger" than its contents has no foundation in the GRI 3(b) requirement, as illuminated by the

Explanatory Notes, that sets meet a particular need or carry out a specific activity.  Further, Customs'

disapproval of containers that are "appreciably" larger than the set items they are intended to hold

provides no practical guidance.  "Appreciable" is defined as something that is "capable of being

estimated, weighed, judged of, or recognized by the mind," or "capable of being recognized by the

senses, perceptible, sensible."  Oxford English Dictionary (2nd ed. 1989).  It is something that is

"possible to estimate, measure, or perceive." American Heritage Dictionary of the English Language

(4th ed. 2000).  *Any* container may be found "appreciably" larger than its contents    otherwise the

contents would not fit.  Thus the persuasiveness of Customs' position that there should be a *per se*

size restriction on set containers is eliminated.

The statute itself provides the reasonable solution to the set-container conundrum.

GRI 3(b) provides that a set is classified according to the heading of the good that provides its

essential character.  If a set container provides the set with its essential character, then the entire set

should be classified under the heading for the container.  If not, then the set should be classified

according to that other item that provides the essential character.  Employing the traditional essential

character analysis, *i.e.*, reviewing "the nature of the [good], its bulk, quantity, weight or value, or by

the role of a constituent [good] in relation to the use of the goods," resolves the issue. *See* Explanatory Note (VIII) to GRI 3(b). For example, in the instant action the essential character of the set is given by the makeup components rather than the cosmetic case.[7]

This analysis is supported by a review of the Explanatory Notes to GRI 3(b). Explanatory Note (X) provides two illustrative examples that include containers classifiable in Heading 4202. One container is described as a leather case, the other is a case of plastic sheeting. There is no indication from the examples that the size of the container relative to its contents should be a determining factor in determining whether a set exists. The Note simply explains that the sets should be classified according to the component that provides the essential character to the set.

Customs' restrictive interpretation has resulted in the arbitrary application of what could (or should) be a relatively simple rule. Two examples cited in the Sets ICP demonstrate the inconsistency of Customs' analysis. In HQ 084717, dated September 13, 1989, Customs found that assorted tools and electrical items imported in a steel tool box formed a set under GRI 3(b), even where the tool box included additional space for storage of tools not included with the set. Customs stated:

> The tool box/cabinet provides convenient storage for the electrician/mechanic. The latching feature and the handle[ ] allow an individual to carry the tool box anywhere he or she may require the use of its contents, whether it be within the home or elsewhere. It is apparent that the subject articles are put up together to meet a particular need and carry out a specific activity. That activity consists of electrical/mechanical work.

---

[7] The opposite result could hypothetically occur should a high-value cosmetic case be imported with only one or two inexpensive makeup items. In that case, the set could have the purpose of putting on makeup but the case would provide the essential character of the set.

However, shortly thereafter in HQ 082213, dated February 13, 1990, Customs held

that a drain cleaning system stored in a tool box was not classifiable as a set.  Customs reasoned:

> The components packed inside the tool box are put together to carry out a specific
> activity, *i.e.*, to use water pressure from the faucet to clear sink drains that are
> blocked. However, the tool box does not contribute to this activity. While the tool
> box functions as a container for the drain cleaning system, it can also be used for
> holding other items. This is so because the size of the tool box is larger than would
> be necessary to serve only as a holder for the drain cleaning system.

Customs' Sets ICP fails to explain why the extra room in the electrical tool box was

not excessive but the extra room in the drain cleaning tool box was.  The arbitrary application of

Customs' size rationale to what are apparently similar items without explanation detracts from the

rulings' and the Sets ICP's power to persuade.  It certainly does appear however, as plaintiff

contends, that "Customs' analysis of GRI 3(b) sets has hardly been a model of consistency or

clarity."  Pl's Memo in Opposition to Def's Br., at 25.

The court therefore declines to adopt Customs' position that the size of a set container

can by itself negate a set's qualification under GRI 3(b), especially where that position arises from

a flawed analysis and application of the "rule" therefrom has been inconsistent and arbitrary.

*V.  Conclusion*

By application of GRI 1 and 3, the court finds that the Blockbuster cosmetic set is

"put up . . . for retail sale" as those terms are used in GRI 3(b) because the items packaged in the set

meet the particular need of putting on makeup.   The court finds that the makeup contained in the

set gives it its essential character.  Under GRIs 1, 3(b) and 6, the court concludes that classification

of the entire set is proper under subheading 3304.20.00.

Judgment will therefore enter in favor of the plaintiff.


                                                    /s/ R. Kenton Musgrave
                                          _____
                                          R.  Kenton Musgrave, Senior Judge


Dated: January 3, 2012
        New York, New York

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

```
_____
                              :
ESTEE LAUDER, INC.,           :
                              :
                Plaintiff,    :
                              :
        v.                    :     Before: R. Kenton Musgrave,  Senior Judge
                              :     Court No. 07-00217
UNITED STATES,                :
                              :
                Defendant.    :
_____:
```

## JUDGMENT

This action having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now, therefore, in conformity with said decision, it is

**ORDERED, ADJUDGED and DECREED** that judgment be, and it hereby is, is entered for the plaintiff Estée Lauder, Inc.; and it is further

**ORDERED** that the entries of the Blockbuster cosmetic sets that are the subject of this action shall be classified under heading 3304, Harmonized Tariff Schedule of the United States, specifically under subheading 3304.20.00; and it is further

**ORDERED** that the defendant's U.S. Customs and Border Protection reliquidate the subject entries in accordance with the foregoing and refund to the plaintiff any excess duties paid, together with interest as provided by law.

/s/ R.Kenton Musgrave
_____
R.  Kenton Musgrave, Senior Judge

Dated: January 3, 2012
      New York, New York